## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA
## FT. LAUDERDALE DIVISION
## CASE NO: _____

PETER M. CAPUA
      Plaintiff,

V.

AIR EUROPA LINEAS AEREAS S.A. INC.
      Defendant

_____/

### COMPLAINT – CLASS ACTION

Plaintiff, PETER M. CAPUA ("Peter M. Capua", "Mr. Capua" or "Plaintiff"), individually and on behalf of all others similarly situated, based upon personal knowledge as to his own actions and based upon the investigation of counsel regarding all other matters, files this Class Action Complaint against Defendant AIR EUROPA LINEAS AEREAS S.A. INC. ("AIR EUROPA" or "Defendant"), alleging as follows:

### NATURE OF ACTION

1.      This Class Action Complaint comes during a time of unprecedented hardship for so many Americans, with each day bringing different news regarding the novel coronavirus COVID-19. Social distancing, sheltering-in-place, and efforts to 'flatten the curve' have separated loved ones from their relatives, workers from their co-workers, and further isolated those already in or at risk of further isolation. It has decimated nationwide employment. Nearly nine in ten Americans are now subject to one or more travel restrictions, all to protect the health and welfare of the nation during this public health emergency.

2.      Plaintiff and Plaintiff's counsel are mindful of the severe impact of the

coronavirus on all aspects of society. In particular, they are aware of the burden this crisis places on small businesses and larger corporations alike, as well as the drain it imposes on scarce judicial resources. Plaintiff is compelled, however, to file now to preserve his rights and those of the proposed class. To minimize the burden on the Court and to reasonably accommodate Defendant, Plaintiff will work with Defendant to reach an agreeable schedule for its response to this Class Action Complaint.

3.     The separation caused by COVID-19 and related protective efforts has particularly impacted travel, including air travel. Opportunity and ability to travel is flat-out eliminated for many Americans, both financially and physically.

4.     As a result, airlines have slashed flight schedules, resulting in thousands of flight cancellations for thousands more passengers. But such passengers face additional hardship if they booked their flights with AIR EUROPA. To add to the difficulties such passengers already face, AIR EUROPA refuses to issue monetary refunds to passengers with canceled flights. It does so even though all airline passengers are entitled to a refund if the airline cancels a flight, regardless of the reason the airline cancels the flight. Instead, AIR EUROPA represents it will either rebook if one "…requests to fly by 31 March 2021" or provide a travel voucher "…valid for one year from issue."

5.     The need for monetary refunds over rebooking or travel vouchers is pressing now. Rebooking or travel vouchers provide little security in this public crisis, particularly where many individual Americans need money now to pay for basics like food and rent, not restrictive, temporary credits towards future travel.

6.     AIR EUROPA's actions have financially damaged Plaintiff and the Class

Members. Plaintiff requested refunds for two tickets on a cancelled flight and was entitled to a refund. But like so many other passengers, AIR EUROPA denied that request. AIR EUROPA has engaged in unfair and deceptive conduct through its policy to refuse refunds, limiting and forcing customers into a rebooked flight or travel voucher instead of returning their money. As a result, Plaintiff brings this action because Plaintiff and the Class Members did not receive refunds for AIR EUROPA cancelled flights, lost the benefit of their bargain and/or suffered out-of-pocket loss, and are entitled to recover compensatory damages, trebling where permitted, and attorney's fees and costs.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the *Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005),* which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the Class is a citizen of a State different from any Defendant, and in which the matter in controversy exceeds in the aggregate sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges that the total claims of individual Class Members in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by *28 U.S.C. §§ 1332(d)(2) and (6).* Plaintiff is a citizen of the State of Florida, whereas Defendant is a citizen of a Foreign Nation for purposes of diversity. Therefore, diversity of citizenship exists under CAFA as required by 28 U.S.C. § 1332(d) (2) (A).

8.     Furthermore, Plaintiff alleges that more than two-thirds of all of the members of the proposed Class in the aggregate are citizens of a state other than Florida, where this action is originally being filed, and that the total number of members of the proposed Class is greater than

100, pursuant to *28 U.S.C. § 1332(d)(5)(B).*

9.      Venue is appropriate in this District because Defendant maintains its principal place of business within the Southern District of Florida. And on information and belief, events and transactions causing the claims herein, including AIR EUROPA's decision-making regarding its refund policy challenged in this lawsuit, has occurred within this judicial district.

## PARTIES

10.      Plaintiff Peter M. Capua is a citizen and resident of the State of Florida. Plaintiff is and continues to be immediately affected by the COVID-19 pandemic. Despite requesting and being entitled to a refund for his cancelled flight, AIR EUROPA has refused to provide Plaintiff a refund.

11.      At the time of his ticket purchase, Plaintiff understood that he would be entitled to a refund if his flight was cancelled and Plaintiff was actually deceived by AIR EUROPA regarding his right to a refund and his options following AIR EUROPA cancelled flights. Plaintiff seeks a refund because he had to purchase two tickets with another airline in light of the cancellations.

12.      Defendant AIR EUROPA's filing with the Florida Division of Corporation indicates that it is a "Foreign Profit Corporation" authorized to do business in Florida as a foreign corporation with a Principal Place of business and Mailing address at: 1111 Brickell Ave., Suite 2803, Miami, FL 33131-3127.

## FACTS

### A.   Background

13.      In a typical service scenario, AIR EUROPA flies to over 44 destinations around Spain, Europe, South America, North America, the Caribbean, Morocco, and Tunisia. As of June

2020, the AIR EUROPA fleet consists of almost 80 aircrafts, which includes about 30 new orders. AIR EUROPA'S fleet consists of Boeing 787 Dreamliner, Airbus 330, Boeing 737-800, and Embraer 195. The company was formed in 1986 and employs over 3000 people.

14.    AIR EUROPA sells its airline seat inventory and fares through the AIR EUROPA's direct channels (such as AIR EUROPA's direct-to-consumer sales website, www.AIREUROPA.COM, and the company's mobile applications) and through traditional travel agencies and online travel agencies. With each ticket sale, AIR EUROPA collects passenger identification information, including name, address, and telephone information.

15.    But regardless of the method by which AIR EUROPA sells its tickets, AIR EUROPA has engaged in unfair, deceptive, and unjust conduct: it is refusing to issue refunds to passengers for coronavirus related flight cancellations.

**B.    The Novel Coronavirus Shutdowns and AIR EUROPA's Resulting Flight Cancellations**

16.    On December 31, 2019, governmental entities in Wuhan, China confirmed that health authorities were treating dozens of cases of a mysterious, pneumonia-like illness. Days later, researchers in China identified a new virus that had infected dozens of people in Asia, subsequently identified and referred to as the novel coronavirus or COVID-19. By January 21, 2020, officials in the United States were confirming the first known domestic infections of COVID-19.

17.    Due to an influx of thousands of new cases in China, on January 30, 2020, the World Health Organization officially declared COVID-19 as a "public health emergency of international concern."

18.    The U.S. State Department warned travelers to avoid traveling to China and on January 31, 2020, the U.S. federal government restricted travel from China, thus beginning travel

restrictions affecting passengers ticketed on domestic and international air travel to and from the United States.

19.     By February 29, 2020, COVID-19 restrictions continued to spread across the globe. As the number of global cases rose to nearly 87,000, the U.S. federal government issued its highest-level warning, known as a "do not travel" warning for areas in Italy and South Korea that are most affected by the virus. The government also banned all travel to Iran and barred entry to any foreign citizen who had visited Iran in the previous 14 days.

20.     On March 11, 2020, the World Health Organization declared COVID- 19 a pandemic. That same day, American officials announced yet another travel ban expansion, this time blocking most visitors from continental Europe to the United States.

21.     Travel restrictions domestically began on March 16, 2020, with seven counties in the San Francisco, California area announcing shelter-in-place orders. Other states, counties, and municipalities have followed the shelter-in-place orders and as of the drafting of this Class Action Complaint, 316 million people in at least 42 states, 3 counties, 9 cities, the District of Columbia, and Puerto Rico are being urged to stay home.

22.     As the restrictions expanded and virus fears mounted, on or about second week of March 2020, AIR EUROPA cancelled flights in the United States because of the spreading impact of the coronavirus.

**C.   AIR EUROPA's Refusal of Passenger Refunds on Cancelled Flights**

23.     As AIR EUROPA announced flight cancellations (combined with decreased domestic bookings), AIR EUROPA took a variety of steps to make it difficult, if not impossible, for consumers to receive any refund on pandemic cancelled flights. AIR EUROPA wanted to retain the money paid to it, given the severe economic losses it is incurring related to pandemic

flight cancellations. It does so despite consumers' right to receive a refund for unused transportation, even for non-refundable tickets.

24.     On February 2, 2020, Peter M. Capua purchased two (2) round trip tickets with AIR EUROPA for his wife and child, Paula Janeiro and Alejandra Janeiro respectively, from Miami, Florida to Oporto (Porto), Portugal, via Madrid, Spain. The tickets were purchased through Expedia. The Expedia flight purchase confirmation e-mailed to Peter M. Capua on February 2, 2020 reflected an Airline Confirmation with AIR EUROPA commonly referred to as an "identifier", of SRDVGW. The flight was originally scheduled to depart from Miami, Florida on June 28, 2020 at 9:30 p.m. to Porto, Portugal with a brief layover in Madrid, Spain. The return flight was scheduled for August 11, 2020 from Porto, Portugal to Miami, Florida with a brief layover in Madrid, Spain. The payment made for both tickets was $1,261.06, exclusive of checked bags and seat choices.

25.     On May 18, 2020, AIR EUROPA forwarded an e-mail to Peter M. Capua's personal e-mail address, addressed to his minor daughter "Alejandra" advising him that the booking with the aforementioned identifier was cancelled due to "…travel and movement restrictions announced by various state agencies….." This e-mail offered one of two options: 1) To manage a change of date or route, at no additional cost if you request to fly by 31 March 2021 or 2) To save the value of the ticket as a credit for a future ticket purchase (valid for any destination operated by Air Europa or on the same route as the original ticket) This voucher is valid for one year from issue."

*26.*     At no time did AIR EUROPA offer any refunds as an option. Thereafter and on several occasions, Peter M. Capua spoke with representatives of AER EUROPA and Expedia seeking full refund and was advised that he had only the two options available as indicated in the

May 18, 2020 e-mail referenced above. In fact, on May 22, 2020, after one such request, Expedia sent an e-mail to Peter M. Capua re-validating what was expressed by AIR EUROPA on May 18, 2020 but with even more conditions, to wit: no permitted travel from December 18, 2020 to January 10, 202[1] and no permitted travel from March 26, 2021 to April 11, 2021, unless of course Plaintiff wanted to pay a penalty and fare difference.

27.     During several conversations that Plaintiff had with representatives with AIR EUROPA, he was advised that the June 28, 2020 trip to Porto, Portugal was cancelled and that the flight could be rescheduled to no earlier than July 1, 2020. During other conversations with AIR EUROPA Plaintiff was advised that the July 1, 2020 flight was cancelled and the earliest flight could be rescheduled to no earlier than July 18, 2020. Then, during yet another conversation with AIR EUROPA, Plaintiff was advised that any flights for July 18, 2020 were cancelled and could be rescheduled to no earlier than July 21, 2020. At this time, Plaintiff requested, and received, an e-mail confirmation from the AIR EUROPA representative, corroborating the verbal statement that the subject flight could not be rescheduled any earlier than July 21, 2020.

28.     The alternatives provided by Air Europa were unacceptable to Plaintiff for many reasons.

29.     In view of the foregoing, Mr. Capua was compelled to purchase tickets for his wife and child on American Airlines ("AA"). AA was able to confirm reservations for June 30, 2020 from Miami to Spain. That flight took place and as of the filing of this complaint, Plaintiff's wife and daughter are in Spain. Plaintiff purchased the AA tickets for $1,483.90 on May 22, 2020.

30.     At all times material, Mr. Capua demanded of AIR EUROPA that he be refunded

his payment in the entire amount referenced above pursuant to AIR EUROPA'S condition of carriage and in view of the flight cancellations and unacceptable future alternatives.

31.     As it relates to those similarly situated, the relevant facts are that Air Europa has also failed to offer those persons a refund for their flights that were cancelled due to travel and movement restrictions announced by various state agencies, as preventative measures in relation to the COVID- 19 coronavirus pandemic.

**D.   Consumer Complaints Regarding AIR EUROPA's Refusal to Provide Passengers Refunds for Cancelled Flights Abound**

32.     Consistent with Plaintiff's experience, consumer complaints regarding AIR EUROPA's unfair, deceptive, and unjust conduct are many.

33.     As numerous customers have complained about this practice by AIR EUROPA and other airlines, the U.S. Department of Transportation ("DOT") issued on April 3, 2020, an Enforcement Notice  Regarding Refunds by Carriers Given the Unprecedented Impact of the COVID-19 Public Health Emergency on Air Travel ("DOT Notice"). The DOT Notice provides that the airlines must refund tickets if they cancel flights due to the novel coronavirus:

> The U.S. Department of Transportation's Office of Aviation Enforcement and Proceedings (Aviation Enforcement Office), a unit within the Office of the General Counsel, is issuing this notice to remind the traveling public, and U.S. and *foreign carriers*, operating at least one aircraft having a seating capacity of 30 or more seats, that passengers should be ***refunded promptly*** when their scheduled flights are cancelled or significantly delayed. Airlines have long provided such refunds, including during periods when air travel has been disrupted on a large scale, such as the aftermath of the September 11, 2001 attacks, Hurricane Katrina, and presidentially declared natural disasters. Although the COVID-19 public health emergency has had an unprecedented impact on air travel, ***the airlines' obligation to refund passengers for cancelled or significantly delayed flights remains unchanged.***
>
> The Department is receiving an increasing number of complaints and inquiries from ticketed passengers, including many with non-refundable tickets, who describe having been denied refunds for flights that were cancelled or significantly delayed. In many of these cases, the passengers stated that the carrier

informed them that they would receive vouchers or credits for future travel. But many airlines are dramatically reducing their travel schedules in the wake of the COVID-19 public health emergency. As a result, passengers are left with cancelled or significantly delayed flights and vouchers and credits for future travel that are not readily usable.

***Carriers have a longstanding obligation to provide a prompt refund to a ticketed passenger when the carrier cancels the passenger's flight or makes a significant change in the flight schedule and the passenger chooses not to accept the alternative offered by the carrier. The longstanding obligation of carriers to provide refunds for flights that carriers cancel or significantly delay does not cease when the flight disruptions are outside of the carrier's control (e.g., a result of government restrictions). The focus is not on whether the flight disruptions are within or outside the carrier's control, but rather on the fact that the cancellation is through no fault of the passenger.***

Accordingly, the Department continues to view any contract of carriage provision or airline policy that purports to deny refunds to passengers when the carrier cancels a flight, makes a significant schedule change, or significantly delays a flight to be a violation of the carriers' obligation that could subject the carrier to an enforcement action.[1]

On the same day, April 3, 2020, the DOT, immediately after issuing the foregoing notice, issued a Clarification Notice:

WASHINGTON – The U.S. Department of Transportation today issued an Enforcement Notice clarifying, in the context of the 2019 Novel Coronavirus (COVID-19) public health emergency, that U.S. and foreign airlines remain obligated to provide a prompt refund to passengers for flights to, within, or from the United States when the carrier cancels the passenger's scheduled flight or makes a significant schedule change and the passenger chooses not to accept the alternative offered by the carrier. The obligation of airlines to provide refunds, including the ticket price and any optional fee charged for services a passenger is unable to use, does not cease when the flight disruptions are outside of the carrier's control (e.g., a result of government restrictions).

The Department is receiving an increasing number of complaints and inquiries from ticketed passengers, including many with non-refundable tickets, who describe having been denied refunds for flights that were canceled or significantly

---

[1] U.S. Dep't of Transportation, Enforcement Notice Regarding Refunds by Carriers given the Unprecedented Impact of the COVID-19 Public Health Emergency on Air Travel (Apr. 3, 2020), https://www.transportation.gov/sites/dot.gov/files/202004/Enforcement%20Notice%20Final%20April%203%20202 0_0.pdf.

delayed. In many of these cases, the passengers stated that the carrier informed them that they would receive vouchers or credits for future travel. Because the COVID-19 public health emergency has had an unprecedented impact on air travel, DOT's Aviation Enforcement Office will exercise its enforcement discretion and provide carriers with an opportunity to become compliant before taking further action. However, the Aviation Enforcement Office will monitor airlines' refund policies and practices and take enforcement action as necessary.[2]

(*emphasis added*). As shown above, the DOT Notice discloses that it "is receiving an increasing number of complaints and inquiries from ticketed passengers, including many with non-refundable tickets, who describe having been denied refunds for flights that were cancelled or significantly delayed." The DOT reminded domestic and foreign carriers, including AIR EUROPA, of their "longstanding obligation to provide a prompt refund to a ticketed passenger when the carrier cancels the passenger's flight or makes a significant change in the flight schedule and the passenger chooses not to accept the alternative offered by the carrier."

34.     Thus, AIR EUROPA's failure to provide prompt refunds for canceled flights violates not only its own Contract of Carriage, but also federal law.

35.     AIR EUROPA not only has a moral responsibility to provide real refunds, but also a legal obligation to do so.

## CLASS ACTION ALLEGATIONS

36.     Plaintiff sues under *Rule 23(a), (b)(2),* and *Rule 23(b)(3)* of the Federal Rules of Civil Procedure, on behalf of himself and a Class defined as follows:

>    All persons in the United States who purchased tickets for travel on AIR EUROPA Air Lines flights scheduled to operate to, from, or within the United States from March 1, 2020 to the present, and continuing, and who were not issued a refund for a cancelled

---

[2] The Clarification Notice can be found here: https://www.transportation.gov/briefing-room/enforcement-notice-regarding-refunds-carriers-given-unprecedented-impact-covid-19.

flight.

37.     Excluded from the Class is Defendant, any entity in which Defendant has a controlling interest, and Defendant's legal representatives, predecessors, successors, assigns, and employees. Further excluded from the Class are this Court and its employees.

38.     Plaintiff reserves the right to modify or amend the Class definition, as appropriate, during this litigation.

39.     The definition of the Class is unambiguous. Plaintiff is a member of the Class he seeks to represent. Class Members can be notified of the class action through ticketing contact information and/or address lists maintained in the usual course of business by Defendant.

40.     Under *Rule 23(a)(1),* Class Members are so numerous and geographically dispersed that their individual joinder of all Class Members is impracticable. The total number of members of the proposed Class is greater than 100 and exceeds the number required for jurisdiction under *28 U.S.C. § 1332(d)(2) and (d)(5)(B).* Given the hundreds, if not thousands, of flight cancellations made by AIR EUROPA, that number greatly exceeds the number to make joinder possible. Class Members may be notified of the pendency of this action by recognized, Court- approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

41.     AIR EUROPA has acted or refused to act on grounds that apply generally to the Class,  so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole under Rule 23(b)(2)

42.     Under Rule 23(b)(3), Plaintiff  shows that common questions of law and fact predominate over the questions affecting only individual Class Members under Rule 23(a)(2) and (b)(3). Some of the common legal and factual questions include:

a.    Whether Defendant engaged in the conduct alleged;

b.    Whether Defendant has a policy and/or procedure of denying refunds to Class

Members for cancelled flights;

c.    Whether Defendant's policy and/or procedure of denying refunds to passengers

on cancelled flights is unfair, deceptive, and/or misleading;

d.    Whether Florida law applies to the nationwide class;

e.    Whether Defendant violated consumer protection statutes and/or false advertising

statutes and/or state deceptive business practices statutes;

f.    Whether Defendant violated the common law of unjust enrichment;

g.    Whether Defendant converted Plaintiff's and the Class Members' refunds and/or

rights to refunds;

h.    Whether Defendant made fraudulent misrepresentations to Plaintiff and the Class

Members;

i.    Whether Defendant breached its contracts with Plaintiff and the Class Members;

j.    Whether the doctrine of promissory estoppel applies to bar Defendant from

denying Plaintiff's and the Class Members' refunds;

k.    Whether Defendant violated the Florida Civil remedies for Criminal Practices

Act; and

l.    The nature and extent of damages and other remedies to which the conduct of

Defendant entitles the Class Members.

43.    Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the Class Members. Similar or identical statutory and common law violations and deceptive business practices are involved. Individual questions pale by

comparison to the numerous common questions that predominate.

44.     The injuries sustained by the Class Members flow, in each instance, from a common nucleus of operative facts under Rule 23(a)(2) - Defendant's misconduct. In each case Defendant has cancelled flights yet denied refunds to Class Members for such cancelled flights.

45.     The Class Members have been damaged by Defendant's misconduct through AIR EUROPA's practice of cancelling flights, yet denying refunds to Class Members for such cancelled flights.

46.     Plaintiff's claims are typical of the claims of the other Class Members as required by Rule 23(a)(3). Plaintiff paid for airline tickets, did not receive a refund for his cancelled flight, and was actually deceived.

47.     Plaintiff shows he and his counsel will fairly and adequately protect the interests of the Class as required by Rule 23(a)(4). Plaintiff is familiar with the basic facts that form the basis of the Class Members' claims. Plaintiff's interests do not conflict with the interests of the other Class Members he seeks to represent. Plaintiff has retained counsel who intends to prosecute this action vigorously. Plaintiff's counsel will fairly and adequately protect the interests of the Class Members.

48.     Consistent with Rule 23(b)(3) and the Local Rules for the Southern District, the class action device is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the Class Members. The relief sought per individual members of the Class is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by the conduct of Defendant. It would be virtually impossible for the Class Members to seek redress individually. Even if the Class Members themselves could afford such individual litigation, the court system could not.

49.     The Southern District of Florida is also a desirable forum under Rule 23(b)(3)(C) because Defendant is headquartered in the Southern District of Florida, made pertinent decisions within this District, and information and relevant documents are expected to exist within this district.

50.     Further, under Rule 23(b)(3)(D), individual litigation of the legal and factual issues raised by the conduct of Defendant would increase delay and expense to all parties and to the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court. Given the similar nature of the Class Members' claims and the absence of material differences in the state statutes and common laws upon which the Class Members' claims are based, a nationwide Class will be easily managed by the Court and the parties.

51.     Plaintiff alleges that the total claims of individual Class Members in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. §§ 1332(d)(2) and (6) due to the hundreds, if not thousands, of flight cancellations made by AIR EUROPA.

## CAUSES OF ACTION

## COUNT - I

## VIOLATIONS OF STATE CONSUMER PROTECTION ACTS

52.     Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein and further alleges as follows:

93.     Count I is brought by Plaintiff, individually and on behalf of all similarly situated residents of each of the 50 states for violations of the state consumer protection acts  including:

a.      the Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Stat. §
        45.50.471, *et seq.*;

b.      the Arizona Consumer Fraud Act, Ariz. Rev. Stat. §§ 44-1521, *et seq.*;

c.      the Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88- 101, *et seq.*;

d.      the California Unfair Competition Law, Bus. & Prof. Code
        §§ 17200, *et seq.* and 17500, *et seq.*;

e.      the California Consumers Legal Remedies Act, Cal. Civ. Code
        § 1750, *et seq.*;

f.      the Colorado Consumer Protection Act, Colo. Rev. Stat. Ann.
        § 6-1-101, *et seq.*;

g.      the Connecticut Unfair Trade Practices Act, Conn. Gen Stat. Ann. § 42-110, *et
        seq.*;

h.      the Delaware Consumer Fraud Act, 6 Del. Code § 2513, *et seq.*;

i.      the D.C. Consumer Protection Procedures Act, D.C. Code § 28- 3901, *et seq.*;

j.      the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201,
        *et seq.*;

k.      the Hawaii Unfair Competition Law, Haw. Rev. Stat. § 480-2, *et seq.*;

l.      the Idaho Consumer Protection Act, Idaho Code. Ann. § 48- 601, *et seq.*;

m.      the Illinois Consumer Fraud and Deceptive Business Practices Act, §815 ILCS
        505/2 *et seq.*;

n.      the Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5- 0.5-2, *et seq.*;

o.      the Iowa Consumer Fraud Act, Iowa Code § 714.16, *et seq.*;

p.      the Kansas Consumer Protection Act, Kan. Stat. Ann. § 50-623, *et seq.*;

q.      the Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann.§ 367.110, *et seq.*;

r.      the Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S.
        51:1401, *et seq.*;

s.      the Maine Unfair Trade Practices Act, Me. Rev. Stat. Ann. Tit. 5, § 207, *et seq.*;

t.      the Maryland Consumer Protection Act, Md. Code Ann. Com. Law, § 13-301, *et
        seq.*;

u.      the Massachusetts Regulation of Business Practices for Consumers Protection
        Act, Mass. Gen Laws Ann. Ch. 93A, *et seq.*;

v.      the Michigan Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, *et
        seq.*;

w.      the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F, *et seq.*;

x.      the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407, *et seq.*;

y.      the Nebraska Consumer Protection Act, Neb. Rev. St. § 59- 1601, *et seq.*;

z.      the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. § 41.600, *et seq.*;

aa.     the New Hampshire Regulation of Business Practices For Consumer Protection,
        N.H. Rev. Stat. § 358-A:1, et seq.;

bb.     the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8, et seq.;

cc.     the New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57-12- 1, et seq.;

dd.   the New York Consumer Protection from Deceptive Acts and Practices, N.Y. Gen. Bus. Law § 349, et seq.;

ee.   the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen Stat. § 75-1.1, et seq.;

ff.   the North Dakota Consumer Fraud Act, N.D. Cent. Code § 51- 15, et seq.;

gg.   the Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann.§ 1345.01, et seq.;

hh.   the Oklahoma Consumer Protection Act, Okla. Stat. tit. 15 § 751, et seq.;

ii.   the Oregon Unlawful Trade Practices Act, Or. Rev. Stat. § 646.605, et seq.;

jj.   the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, et seq.;

kk.   the Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-5.2(B), et seq.;

ll.   the South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10, et seq.;

mm.   the South Dakota Deceptive Trade Practices and Consumer Protection, S.D. Codified Laws § 37-24-1, et seq.;

nn.   the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, et seq.;

oo.   the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Code Ann., Bus. & Con. § 17.41, et seq.;

pp.   the Utah Consumer Sales Practices Act, Utah Code. Ann. § 13- 11-175, et seq.;

qq.   the Vermont Consumer Fraud Act, 9 V.S.A. § 2451, et seq.;

rr.   the Virginia Consumer Protection Act of 1977, Va. Code Ann. § 59.1-199, et seq.;

ss.   the Washington Consumer Protection Act, Wash. Rev. Code § 19.86.010, et seq.;

tt.   the West Virginia Consumer Credit And Protection Act, W. Va Code § 46A, et seq.;

uu.   the Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18, et seq.; and

vv.   the Wyoming Consumer Protection Act, Wyo. Stat. Ann. § 40- 12-101, et seq.

53.   The unfair and deceptive practices engaged in by Defendant described above, occurring in the course of conduct involving trade or commerce, constitute unfair methods of competition and unfair or deceptive acts or practices within the meaning of each of the above-enumerated statutes.

54.   Defendant's acts and practices were unfair and created a likelihood of confusion or misunderstanding and misled, deceived, or damaged Plaintiff and members of the Class in connection with the sale and refunds of airline tickets. Defendant's conduct also constituted the

use or employment of deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of a material fact with intent that others rely upon the concealment, suppression, or omission in connection with the sale or advertisement of goods or services, whether or not a person has in fact been misled, deceived, or damaged in violation of each of the above-enumerated statutes.

55.     Pursuant to *Fla. Stat. §501.204* (1) "Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful and (2)   …….. in construing subsection (1), due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1) as of July 1, 2017, which provides "**(a)**DECLARATION OF UNLAWFULNESS; POWER TO PROHIBIT UNFAIR PRACTICES; INAPPLICABILITY TO FOREIGN TRADE **(1)** Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful."

56.     The DOT has unequivocally found that the acts alleged to have been committed are unfair and deceptive acts or practices. More specifically, "the [U.S.] Department [of transportation] continues to view any contract of carriage provision or airline policy that purports to deny refunds to passengers when the carrier cancels a flight, makes a significant schedule change, or significantly delays a flight to be a violation of the carriers' obligation that could subject the carrier to an enforcement action." *See Enhancing Airline Passenger Protections, 76 Fed. Reg. 23110-01, at 23129 (Apr. 25, 2011)* (citing July 15, 1996 Industry Letter which advises carriers that "applying . . . non- refundability/penalty provisions in situations in which the change of flight time or travel date has been necessitated by carrier action or 'an act of god',

e.g., where the carrier cancels a flight for weather or mechanical reasons . . . is grossly unfair and it violates 49 U.S.C. 41712, as would any contract of carriage or tariff provision mandating such a result" and putting carriers on notice that the Department "will aggressively pursue any cases of this type that come to our attention").

57.     To date, and despite demand by Plaintiff individually and the other Class Members, Defendant has failed to return Plaintiff's money and the money of the other Class Members. Thus, Plaintiff and other class members are entitled to damages as specified in *Fla. Stat. sec. 501.2105* as well as damages permitted in other states' provisions of their respective Deceptive and Unfair Trade Practices statutes.

58.     As a direct result of Defendant's actions, Plaintiff was required to retain counsel and/or represent himself and is entitled to an award of attorneys' fees pursuant to *Fla. Stat. §501.2105* and taxable costs. As a direct result of Defendant's result, Plaintiff and the Class Members are entitled to specific performance and/or fair compensation in the form of complete refunds for all fares, charges, and taxes paid and for such other relief permitted by the Florida Deceptive and Unfair Trade Practices Act and other similar state statutes of the United States.

WHEREFORE, Plaintiff and other Class members demand judgment in their favor and against Defendant as follows: monetary damages, damages in accordance with *Fla. Stat. sec. 501.211(1) and (2)* and those provisions of other States' Consumer Protection Laws; pre-judgment interest; attorneys' fees pursuant to *Fla. Stat. §501.2105* and those statutes providing for attorney's fees in other jurisdictions; costs incurred in this matter; and, where applicable, such other relief provided by other States in accordance with their State statutes or common law including treble damages or punitive damages.

## COUNT II

## UNJUST ENRICHMENT

59.     Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

60.     At all times relevant hereto, Defendant sold Plaintiff and the members of the Class airline tickets for travel to, from, and within the United States.

61.     AIR EUROPA has benefitted from its unlawful acts by receiving payments for the sale of tickets on cancelled flights, though AIR EUROPA has no right to deny Plaintiff and the Class Members refunds for tickets purchased on AIR EUROPA cancelled flights.

62.     Plaintiff and members of the Class conferred upon Defendant a benefit in the form of money for tickets on specific flights. In paying for such flights, Plaintiff and the Class Members conferred benefits that were non- gratuitous.

63.     Defendant appreciated or knew of the non-gratuitous benefits conferred upon it by Plaintiff and members of the Class.

64.     Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiff and members of the Class, with full knowledge and awareness that, because of Defendant's unconscionable wrongdoing, Plaintiff and members of the Class are entitled to refunds for cancelled flights. Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiff and members of the Class under these circumstances made Defendant's retention of the non-gratuitous benefits unjust and inequitable.

65.     Because Defendant's retention of the non-gratuitous benefits conferred by Plaintiff and members of the Class is unjust and inequitable, Plaintiff and members of the Class are entitled to and seek disgorgement and restitution of Defendant's wrongful profits, ticket

revenue on AIR EUROPA cancelled flights, and benefits in a manner established by the Court.

## COUNT III

## CONVERSION

66.     Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

67.     Plaintiff and the other members of the Class have an undisputed right to immediate refunds in lieu of rebooking and/or travel vouchers for their purchase of tickets on flights cancelled by AIR EUROPA.

68.     AIR EUROPA wrongfully exercised control over and/or intentionally interfered with the rights of Plaintiff and members of the Class by limiting passengers on AIR EUROPA cancelled flights to either a rebooked flight or a travel voucher. All the while Defendant has unlawfully retained the monies Plaintiff and the Class Members paid for tickets on AIR EUROPA cancelled flights.

69.     AIR EUROPA deprived Plaintiff and the other members of the Class the value they paid for tickets on AIR EUROPA cancelled flights as well as their right for a refund.

70.     Plaintiff and members of the Class have requested and/or demanded that AIR EUROPA issue refunds for AIR EUROPA cancelled flights.

71.     This interference with the rights and services for which Plaintiff and members of the Class paid damaged Plaintiff and the members of the Class, in that they purchased tickets and, as such, AIR EUROPA has deprived Plaintiff and members of the Class of the right to their property, in this case, the amounts paid for tickets on cancelled flights.

72.     Plaintiff and members of the Class may exercise their right to full refunds of all amounts paid for tickets on AIR EUROPA cancelled flights.

## COUNT IV

## FRAUDULENT MISREPRESENTATION

73.     Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

74.     Defendant intentionally misrepresented to Plaintiff and the Class Members regarding their rights to a refund on AIR EUROPA cancelled flights, including but not limited to, as reflected in AIR EUROPA's refund policies.

75.     Defendant intentionally and actively misrepresented to Plaintiff and Class Members that passengers on AIR EUROPA cancelled flights are limited to rebooking or travel voucher.

76.     Defendant's representation was false. At all times relevant, Plaintiff and members of the Class are entitled to refunds on AIR EUROPA cancelled flights, not just rebooking or travel voucher.

77.     Defendant's misrepresentation was made fraudulently. Defendant made its representations with knowledge that Plaintiff and Class Members were entitled to refunds on AIR EUROPA cancelled flights and also knowing that Plaintiff and Class Members were not limited to rebooking or travel vouchers for AIR EUROPA cancelled flights.

78.     Instead, when AIR EUROPA made the representation regarding the rights to refunds and/or post-AIR EUROPA flight cancellation options, AIR EUROPA intended that Plaintiff and the Class Members would rely on it.

79.     Plaintiff and the Class Members relied on Defendant's representations.

80.     The reliance by Plaintiff and the Class Members on Defendant's representations was reasonable.

81.     Defendant's representations proximately caused financial damage to Plaintiff and the Class Members. AIR EUROPA misrepresented to passengers, in part, on cancelled flights that they were limited to rebooking or travel vouchers, when in fact they were entitled to full refunds.

## COUNT V

## BREACH OF CONTRACT

82.     Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

83.     Defendant made offers to Plaintiff and the Class Members to enter into a contract for Defendant to provide Transportation Services to Plaintiff and the Class Members through passenger tickets for air travel between specific locations, on specific flight numbers, on specific dates and times, at specific prices.

84.     Defendant's offer to provide Transportation Services to Plaintiff and the Class Members also included Defendant's offer that it would refund Plaintiff and the Class Members for all unused portions of passenger tickets for all flights with flight delays greater than 90 minutes as well as for flight cancellations. Such offers were specifically identified in Defendant's Conditions of Carriage. The Conditions of Carriage are incorporated herein by reference as if fully set forth herein. *See Conditions of Carriage available at* *https://www.aireuropa.com/en/flights/conditions* (last visited July 7, 2020) (obligating AIR EUROPA to issue refunds in an amount equal to the fair and charges paid for unused portions of the passenger's ticket for refusals of transport, flight delays, and cancellations). More specifically, Article 9., paragraph **1. Schedules**, provides in relevant part that "…..If there is a significant change to the scheduled departure time, Air Europa will offer passengers a choice

from the following options: i) an alternative flight that the passenger is prepared to accept, or ii) a refund.  This does not affect other corresponding rights, when applicable, in accordance with any applicable laws." Further Article 9., paragraph 2. Involuntary Refunds states in relevant part that "If Air Europa cancels a flight, fail[s] to operate a flight reasonably according to schedule or fail[s] to stop at passenger's destination or Stopover or cause passenger to miss a connecting Flight, on which passenger holds a reservation under a single Contract of Carriage, the amount of the refund shall be: a) If no portion of the Ticket has been used, an amount equal to the fare paid;…"

85.     Defendant made such offers in writing through the AIR EUROPA's direct channels (such as AIR EUROPA's direct-to-consumer sales website, www.AIR EUROPA.com, and the company's mobile applications), through traditional travel agencies, and through online travel agencies.

86.     The terms of Defendant's offer to provide Transportation Services contained a definite promise by Defendant and gave Plaintiff and the Class Members the power to agree to the terms of Defendant's offer to provide Transportation Services, including but not limited to, through the act of purchasing a ticket or accepting transportation on Defendant's aircraft.

87.     Plaintiff and the Class Members accepted Defendant's offer to provide Transportation Services, agreeing to the material terms contained in Defendant's offer to provide Transportation Services.

88.     Plaintiff and the Class Members communicated their acceptance of Defendant's offer to Defendant by purchasing one or more tickets, booking Transportation Services with Defendant.

89.     The agreement between Plaintiff, the Class Members, and Defendant included an

exchange of promises or value, *i.e.*, consideration. Here, Plaintiff and the Class Members provided Defendant with consideration in the form of amounts equal to the monetary value of the fare and all charges and taxes paid.

90.     Plaintiff and the Class Members performed all obligations and conditions required and expected of them or had a valid excuse for not performing any such obligations due to the COVID-19 pandemic.

91.     Defendant delayed Plaintiff's and the Class Members' flights by more than 30 minutes and/or cancelled their flights.

92.     Defendant has failed to provide and/or have outright refused to provide refunds to Plaintiff and the Class Members for such delayed or cancelled flights. Defendant did so even though Defendant was contractually obligated to provide refunds to Plaintiff and the Class Members in such circumstances. As a result, Defendant has failed to perform and/or has materially breached its contracts with Plaintiff and the Class Members.

93.     Because of Defendant's failure to perform the contract, Plaintiff and the Class Members have been damaged and/or did not receive the benefits, payment, and/or performance to which they were entitled.

94.     As a result, Plaintiff and the Class Members are entitled to specific performance and/or fair compensation in the form of complete refunds for all fares, charges, and taxes paid.

<u>**COUNT VI**</u>

<u>**CIVIL REMEDIES FOR FOR CRIMINAL ACTS**</u>

95.     Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein and further alleges as follows:

96.      Count VI is brought by Plaintiff, individually, and on behalf of all similarly

situated residents of each of the 50 states for violations of each states Acts for Civil Remedies for Criminal Practices including Florida's Civil Remedies for Criminal Practices Act.

97. This is an action for civil theft pursuant to *Fla. Stat. §772.11* and similar statutes in each state of the United States.

98. Defendant either knowingly obtained or used, or endeavored to obtain or to use, Peter M. Capua's property (money) and the money of other Class Members with intent to, either temporarily or permanently deprive him/them of the right to his/their property, or a benefit from his/their property, in violation of *Fla. Stat. sec. 812.014(1)(a)* and other similar state statutes of the United States. Additionally and pursuant *Fla. Stat. sec. 812.014(1)(b)* and other similar state statutes of the United States, Defendant has either knowingly obtained or used, or has endeavored to obtain or to use, Peter M. Capua's property (money) and the money of other Class Members with intent to, either temporarily or permanently appropriate the property to its own use or to the use of any person not entitled to the use of his property.

99. Pursuant to Florida Statute *§772.11* and other similar state statutes of the United States, Plaintiff individually, and on behalf of other Class Members made a final written statutory demand to Defendant for his money and case files on July 6, 2020.

100. To date, and despite demand by Plaintiff individually and the other Class Members, Defendant has failed to return Plaintiff's money and the money of the other Class Members.

101. As a direct and proximate cause of Defendant's unlawful actions, Plaintiff was and continues to be deprived of its right to his money and case files and the benefit therefrom, and has suffered damages. Pursuant to *Fla. Stat. §772.11*. Plaintiff is entitled to treble damages for the theft of his money and case files.

95.     As a direct result of Defendant's actions, Plaintiff was required to retain counsel and/or represent himself and is entitled to an award of attorneys' fees pursuant to *Fla. Stat. §772.11* and taxable costs. As a direct result of Defendant's result, Plaintiff and the Class Members are entitled to specific performance and/or fair compensation in the form of complete refunds for all fares, charges, and taxes paid and for such other relief permitted by *Fla. Stat. §772.11* and other similar state statutes of the United States

WHEREFORE, Plaintiff and other Class members demand judgment in their favor and against Defendant as follows: Damages in the principal amount of the un-refunded ticket purchases, treble damages; pre-judgment interest; attorneys' fees pursuant to *Fla. Stat. 772.185* and those statutes providing for attorney's fees in other jurisdictions; costs incurred in this matter; and, where applicable, such other relief provided by other states in accordance with their state statutes or common law.

.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and Class Members request that the Court enter an order or judgment against Defendant including:

A.     Certification of the action as a Class Action under *Rules 23(b)(2) and 23(b)(3)* of the Federal Rules of Civil Procedure, and appointment of Plaintiff as Class Representative and his counsel, S. Peter Capua Esq. and Khullar P.A., as Class Counsel;

B.     Damages and refunds in the amount of un-refunded monies paid for AIR EUROPA airline tickets;

C.     Actual damages, statutory damages, punitive or treble damages, and such other relief as provided by the statutes cited;

D.      Pre-judgment and post-judgment interest on such monetary relief;

E.      Other appropriate injunctive relief as permitted by law or equity, including an order enjoining Defendant from retaining refunds for AIR EUROPA cancelled flights;

F.      The costs of bringing this suit, including reasonable attorney's fees; and

G.      All other relief to which Plaintiff and members of the Class may be entitled by law or in equity.

## JURY DEMAND

Plaintiff demands trial by jury on his own behalf and on behalf of the Class Members.

Respectfully Yours,

_____

Divya Khullar, Esq.
Florida Bar No. 0101116
**Khullar P.A.**
4786 W. Commercial Blvd.
Tamarac, Florida 33319
Phone: (954) 642-2308
Fax:    (754) 999-7057
Notices@KhullarLaw.com
Dkhullar@KhullarLaw.com
*Attorneys for Plaintiff, individually, and on behalf of all others similarly situated.*

*and*

/s/_____
Peter M. Capua, pro se
4786 W. Commercial Blvd.
peter@khullarlaw.com
Tamarac, Florida 33319

Phone: (954) 642-2308
Fax:    (754) 999-7057

*and*

/s/_____
S. Peter Capua Esq.
4786 W. Commercial Blvd.
Tamarac, Florida 33319
Phone: (954) 642-2308
Fax:    (754) 999-7057
*Attorney for Plaintiff, individually, and on behalf of all others similarly situated.*