UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-61438-RAR

**PETER CAPUA**,

    Plaintiff,

v.

**AIR EUROPA LINEAS AEREAS S.A. INC.**,

    Defendant.
_____/

## ORDER GRANTING MOTION TO COMPEL ARBITRATION

Before the Court is Defendant Air Europa Lineas Aereas S.A. Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint and Compel Arbitration [ECF No. 13] ("Motion"). Having considered the Motion, Plaintiff's Response [ECF No. 21],[1] Defendant's Reply [ECF No. 25], the record, and applicable law, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion [ECF No. 13] is **GRANTED IN PART and DENIED IN PART** as set forth herein.

## BACKGROUND

Plaintiff Peter Capua ("Capua") commenced this putative class action against Defendant Air Europa Lineas Aereas S.A. Inc. ("Air Europa") in July 2020. *See* Compl. [ECF No. 1]; First Amended Complaint [ECF No. 5] ("Am. Compl."). Capua alleges that Air Europa "cancelled"[2]

---

[1] For clarity, although several responses appear on the docket, the only response this Court has considered is Plaintiff's Response to Air Europa Lineas Aereas S.A. Inc.'s Motion to Compel Arbitration and Motion to Dismiss Plaintiff's First Amended Complaint [ECF No. 21], filed on October 15, 2020. All other "responses" were stricken from the record for failure to comply with Local Rule 7.1(c)(2) and the Court's formatting rules. *See* Order Granting Motion to Strike [ECF No. 20].

[2] According to Capua's Complaint, a "cancelled" flight is defined to include not only the flights cancelled by Air Europa but also the "flights booked by individuals who, at some point, during the 'relevant period', faced travel restrictions imposed by various countries." *See* Am. Comp. at 1, n.1.

his flights in the wake of the COVID-19 pandemic and then refused to refund his travel fares—which he contends is a violation of Air Europa's Conditions of Carriage providing that passengers have contractual rights to refunds when "an airline either cancels a flight or a flight is significantly delayed, regardless of the reason the airline cancels the flight or the reason for the significant delay." Am. Compl. ¶¶ 4, 6, 40.

### A. Capua Purchases Air Travel Tickets on Expedia.Com

Capua purchased three non-refundable tickets to travel from Miami, Florida to Porto, Portugal, departing on August 4, 2020 and returning on August 11, 2020.[3] Am. Compl. ¶¶ 6, 34. He purchased the tickets through the online travel agency Expedia.com. *Id.* ¶ 28. The Terms of Use ("Expedia's TOU"),[4] which Capua agreed to in order to purchase the airline tickets on Expedia.com, state in relevant part:

---

[3] It is undisputed that the tickets Capua purchased under reservation locators "SWB4YV" and "SRDVGW" were non-refundable. Attached to Capua's Response are the relevant receipts and booking confirmations which conspicuously indicate "**Tickets are nonrefundable**." *See* Resp., Exs. 4, 5 [ECF Nos. 21-4, 21-5]. Additionally, Air Europa has provided the affidavit of Pablo Sanchez [ECF No. 13-1], a Country Manager for the airline's USA and Canada division, which further verifies that Capua purchased non-refundable tickets. *Id.*, ¶ 4.

[4] In his Response, Capua argues the Court cannot consider the copy of Expedia's TOU [ECF No. 13-2], attached to Air Europa's Motion, because it is "an unauthenticated printout from Expedia . . . purporting to be an arbitration agreement." Resp. ¶ 6. Capua also argues that the version of Expedia's TOU attached to Defendant's Motion was revised on June 16, 2020—which would have been *after* Capua purchased his tickets on Expedia.com on February 2, 2020. *Id.* To address Capua's timing concern, in its Reply, Air Europa attaches a (virtually identical) copy of Expedia's TOU as archived on February 1, 2020 [ECF No. 25-1]. The archived copy of Expedia's TOU as of February 1, 2020 was obtained from Internet Archive's Wayback Machine, which maintains archived copies of historical webpages. Importantly, courts have taken judicial notice of such records. *See Tobinick v. Novella*, No. 14-80781, 2015 WL 1526196, at *2 (S.D. Fla. Apr. 2, 2015) (taking judicial notice of Internet Archive's website history); *Phol v. MH Sub I, LLC*, 332 F.R.D. 713, 716 (N.D. Fla. 2019) (quoting Fed. R. Evid. 201(b)(2)); *see also Pond Guy, Inc. v. Aquascape Designs, Inc.*, No. 13-13229, 2014 WL 2863871, at *4 (E.D. Mich. June 24, 2014) ("[T]he Internet Archive has been found to be an acceptable source for the taking of judicial notice."). Additionally, contrary to Capua's contentions, in considering a motion to compel arbitration, the court may consider matters outside of the four corners of the complaint. *Mamani v. Sanchez Berzain*, 636 F. Supp. 2d 1326, 1329 (S.D. Fla. 2009); *Banks v. Cashcall, Inc.*, 188 F. Supp. 3d 1296, 1303 n.3 (M.D. Fla. 2016). Accordingly, for purposes of the analysis set forth in this Order, Expedia's TOU as archived on February 1, 2020 [ECF No. 25-1] is properly before the Court.

**DISPUTES**

\*\*\*

Any and all Claims will be resolved by binding arbitration, rather than in court, except you may assert Claims on an individual basis in small claims court if they qualify. **This includes any Claims you assert against us, our subsidiaries, travel suppliers or any companies offering products or services through us (which are beneficiaries of this arbitration agreement)**. This also includes any Claims that arose before you accepted these Terms of Use, regardless of whether prior versions of the Terms of Use required arbitration.

\*\*\*

**Any and all proceedings to resolve Claims will be conducted only on an individual basis and not in a class, consolidated or representative action**.  If for any reason a Claim proceeds in court rather than in arbitration we each waive any right to a jury trial.  The Federal Arbitration Act and federal arbitration law apply to this agreement.

Reply, Ex. 1 at 2-3 (emphasis added).  Additionally, Expedia's TOU also states:

**SUPPLIER RULES AND RESTRICTIONS**

**Additional terms and conditions will apply to your reservation and purchase of travel—related goods and services that you select.**  Please read these additional terms and conditions carefully. **In particular, if you have purchased an airfare, please ensure you read the full terms and conditions of carriage issued by the travel supplier, which can be found on the supplier's website**. You agree to abide by the terms and conditions of purchase imposed by any supplier with whom you elect to deal, including, but not limited to, payment of all amounts when due and compliance with the supplier's rules and restrictions regarding availability and use of fares, products, or services. Airfare is only guaranteed once the purchase has been completed and the tickets have been issued. Airlines and other travel suppliers may change their prices without notice. We reserve the right to cancel your booking if full payment is not received in a timely fashion.

*Id.* at 5 (emphasis added and in original).

### B. Air Europa's Conditions of Carriage

When a passenger purchases a ticket for an Air Europa flight, he enters into a contract of carriage with Air Europa which is governed by the airline's Conditions of Carriage ("COC"). Air Europa's COC provides, in relevant part:[5]

### 1.  DEFINITIONS

\*\*\*

**CONDITIONS OF CONTRACT**
Mean those statements contained in, or delivered with, the Ticket or Itinerary receipt (Printed Itinerary), identified as such and which incorporates, by reference, these Conditions of Carriage.

Conditions of Carriage, Art. 1. Air Europa's COC explains that "[s]ome Tickets are sold at discounted fares, which may be partially or completely non-refundable." *Id.*, Art. 3 Sec. 1. With respect to passengers seeking refunds, the COC groups passengers into two categories: (1) those affected by "involuntary" cancellations, which occur when Air Europa cancels a flight; and (2) "voluntary" cancellations, which occur when a passenger cancels their flight. *Id.*, Art. 10, Sec. 2-3.

For a "voluntary" cancellation of a refundable ticket, the COC allows for a refund, provided that certain conditions are met. *Id.* But for a "voluntary" cancellation of a non-refundable ticket, the COC does not. *Id.* Specifically, the COC provides that a refund is not applicable "when the fare conditions state that cancellation or refund is not allowed, or Tickets are bearing a 'NON-REFUNDABLE' or 'NO REEMBOLSABLE' remark." *Id.*, Art. 10, Sec.3(b); *see also* Art. 10, Sec. 5(f).

---

[5] The First Amended Complaint incorporates Air Europa's COC by reference. *See* Am. Compl. ¶ 91. The Conditions of Carriage are available on Air Europa's website at https://www.aireuropa.com/en/flights/conditions.

### C. Procedural History

Capua filed this action on behalf of a putative class consisting of all persons who purchased tickets for travel with Air Europa in the United States from March 1, 2020, onward, and who were not issued a refund for a "cancelled flight," or for those flights that were significantly delayed. Am. Compl. ¶ 42. Air Europa, relying on the arbitration clause in Expedia's TOU, moves to compel arbitration of Capua's claims against it. In support, Air Europa notes that Capua's claims directly relate to the tickets he purchased through Expedia.com. In other words, according to Air Europa, "in purchasing his tickets through Expedia, Plaintiff agreed to resolve any claims against Expedia's travel suppliers (such as Air Europa) through binding, individual arbitration – and further agreed that the arbitration agreement could be enforced by travel suppliers, such as Air Europa." Mot. at 8. In the alternative, Air Europa moves to dismiss Capua's claims pursuant to Federal Rules of Civil Procedure 8(a), 10(b), 12(b)(1) and 12(b)(6).[6]

## LEGAL STANDARD

### A. Federal Arbitration Act

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, governs the enforceability of an arbitration agreement. Under the FAA, arbitration agreements are "valid, irrevocable, and enforceable." 9 U.S.C. § 2. The FAA "leaves no room for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original) (citing 9 U.S.C. §§ 3-4).

---

[6] Following Air Europa's Motion, Capua voluntarily withdrew his claims for unjust enrichment, conversion and fraudulent misrepresentation. *See generally*, Resp. Accordingly, the remaining claims are Count I - Violations of State Consumer Protection Acts; Count V - Breach of Contract; and Count VI - Civil Remedies for Criminal Practices.

Whether an arbitration agreement exists at all is "simply a matter of contract." *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1346 (11th Cir. 2017). Here, although the parties do not offer any meaningful choice-of-law analysis, for the reasons stated below (*see infra* B), the Court finds that Florida law governing "the validity, revocability, and enforceability of contracts generally" controls this dispute. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009). Although federal courts apply state contract law in determining the existence of an agreement to arbitrate, "federal policy favoring arbitration is taken into consideration even in applying ordinary state law." *Caley v. Gulfstream Aerospace Corp.*, 428 F. 3d 1359, 1368 (11th Cir. 2005).

Under Florida law, courts must consider three factors when ruling on a motion to compel arbitration: "(1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999). "[D]oubts about the scope of an arbitration agreement, as well as any questions about waivers thereof, are in favor of arbitration, rather than against it." *Breckenridge v. Farber*, 640 So. 2d 208, 210 (Fla. 4th DCA 1994). However, "[t]he party seeking enforcement of an agreement has the burden of establishing that an enforceable agreement exists." *CEFCO v. Odom*, 278 So. 3d 347, 352 (Fla. 1st DCA 2019). And, "no party may be forced to submit a dispute to arbitration that the party did not intend and agree to arbitrate." *Seifert*, 750 So. 2d at 636.

### B.  State Contract Law

In this case, the parties have not provided a meaningful choice of law analysis. Instead, they assume Florida law applies. Air Europa relies primarily on Eleventh Circuit authority applying Florida law, and Capua does not contend otherwise. Expedia's TOU provides that the applicable law is the FAA, federal arbitration law, and for reservations made by U.S. residents, the laws of the state in which the purchaser's billing address is located. Reply, Ex. 1 at 23. Capua is a resident of the State of Florida. *See* Am. Compl. ¶ 9. Thus, assuming his billing address is in

Florida, Florida law and federal arbitration law govern here in accordance with Expedia's TOU. Therefore, the Court applies Florida law, as well as federal arbitration law, in its analysis of the arbitration clause under Expedia's TOU.

## ANALYSIS

As explained above, Air Europa maintains that Capua agreed to arbitrate any claim relating to his ticket purchase when he agreed to Expedia's TOU. Air Europa contends that, although it is a non-signatory to Expedia's TOU, it may nevertheless invoke arbitration and bind Capua to his agreement to arbitrate under the express terms of the arbitration clause in the TOU. In the alternative, Air Europa argues that Capua should be required to arbitrate his claims because, while it is not a signatory, it is a third-party beneficiary of Expedia's TOU.

In opposition, Capua contends the arbitration clause he agreed to when he purchased his flights on Expedia.com is inapplicable to this action for five reasons. *First*, Expedia's TOU is not admissible and cannot be considered.[7] *Second*, Air Europa is not a party to Expedia's TOU, and, therefore, cannot enforce the arbitration clause. *Third*, Air Europa is not a third-party beneficiary of Expedia's TOU. *Fourth*, Capua argues that his claims fall outside the scope of the arbitration clause. And *fifth*, Capua argues that a federal regulation (namely 14 C.F.R. § 253.10) prohibits Air Europa from enforcing the arbitration clause.

For the following reasons, the Court agrees with Air Europa and finds that the arbitration clause is enforceable. Although Air Europa is not a party to Expedia's TOU, under the plain language of the TOU, it is a third-party beneficiary entitled to enforce the arbitration clause with any signatory passenger—such as Capua. Further, the Court concludes that Capua's claims against

---

[7] As explained *supra* n.4, Capua's evidentiary objection is without merit. The Court can and will consider Expedia's TOU as archived on February 1, 2020 for purposes of Air Europa's Motion. Therefore, the Court need not address this argument any further.

Air Europa are within the scope of the arbitration clause in Expedia's TOU. And lastly, the federal regulation Capua relies on—section 253.10—is entirely inapplicable to this matter.

### A. Existence of a Valid Agreement to Arbitrate

Capua does not dispute that he purchased his airline tickets through Expedia. *See* Resp. ¶¶ 2-4, 5; Exs. 4-5; *see also* Am. Compl. ¶¶ 28-35. He also does not dispute that by finalizing his online ticket purchase, he necessarily clicked through all required prompts, indicating his acceptance to Expedia's TOU, including the arbitration clause contained therein. *See* Resp. ¶¶ 7-8 ("[T]he Terms of Use are contracts between the customers making the reservation, Plaintiff and Expedia[.]"). Further, he acknowledges that Expedia's TOU contains an arbitration clause. *Id*.

Whether Capua has agreed to, or is otherwise bound, to arbitrate is a threshold question for the Court. "[W]ith respect to the threshold question of whether an [arbitration] agreement between the parties exists at all, the initial burden is on the defendant to prove the existence of a contract by a preponderance of the evidence." *Fantis v. Flywheel Sports, Inc.*, No. 18-24934, 2019 WL 1582957, at *2, n.2 (S.D. Fla. Mar. 11, 2019) (citations omitted), *report and recommendation adopted*, No. 18-24934, 2019 WL 2245417 (S.D. Fla. Apr. 29, 2019). Further, whether a valid agreement to arbitrate exists is a matter of state contract law. *Id.* at *1. And "the goal of Florida law vis-à-vis contract formation is to effectuate the parties' intent" as expressed in the terms of the contract. *Solymar Investments, Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 991-92 (11th Cir. 2012); *see also Emergency Assocs. of Tampa, P.A. v. Sassano*, 664 So. 2d 1000, 1002 (Fla. 2d DCA 1995) ("[I]n the absence of an ambiguity on the face of a contract, it is well settled that the actual language used in the contract is the best evidence of the intent of the parties, and the plain meaning of that language controls.") (internal citations and quotation marks omitted).

"[W]hile doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to

arbitrate has been made." *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1116 (11th Cir. 2014) (citation omitted). Thus, the Court must first analyze whether a valid agreement to arbitrate exists between the parties.

### 1. Air Europa is Not a Signatory to Expedia's TOU

Under Expedia's TOU, Capua and Expedia have agreed to arbitrate certain disputes. It is undisputed that Air Europa is not a signatory to the agreement. Expedia's TOU forms a contract between the client making the reservation and the online platform Expedia.com—and Air Europa is a non-party to said agreement. The Court, therefore, rejects Air Europa's argument that under the plain language of the arbitration clause, it may invoke the agreement because "Plaintiff's arbitration agreement expressly covers the claims raised by Plaintiff." Mot. at 9. Accordingly, because Air Europa is not a signatory to Expedia's TOU, it may not *directly* invoke the arbitration clause to compel arbitration of the instant dispute.

### 2. Air Europa is a Third-Party Beneficiary to Expedia's TOU

However, Air Europa's non-party status does not end the analysis. Under Florida law, a non-party to a contract containing an arbitration clause may compel parties to the contract to arbitrate if it is determined that the non-party is a third-party beneficiary to the contract. *See Peters v. The Keyes Co.*, 402 F. App'x 448, 451 (11th Cir. 2010) (citing *Fla. Power & Light Co. v. Road Rock, Inc.,* 920 So. 2d 201, 203 (Fla. 4th DCA 2006)). A third party may invoke the agreement only if the parties to the contract clearly express an intention to confer a benefit on the third party. *See Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 983 (11th Cir. 2005).

"[I]n order to find the requisite intent, it must be shown that both contracting parties intended to benefit the third party." *Caretta Trucking, Inc. v. Cheoy Lee Shipyards Ltd*., 647 So. 2d 1028, 1031 (Fla. 4th DCA 1994). "Florida law looks to 'nature or terms of a contract' to find the parties' clear or manifest intent that it 'be for the benefit of a third party.'" *Jenne v. Church &*

*Tower, Inc.*, 814 So. 2d 522, 524 (Fla. 4th DCA 2002) (quoting *Am. Sur. Co. of N.Y. v. Smith*, 100 Fla. 1012 (1930)). Further, Florida law holds that "the language used in a contract is the best evidence of the intent and meaning of the parties." *Boat Town U.S.A., Inc. v. Mercury Marine Div. of Brunswick Corp.*, 364 So. 2d 15, 17 (Fla. 4th DCA 1978).

Few cases have addressed the third-party beneficiary doctrine in the context of a consumer's acceptance of an Online Travel Agency's ("OTA") terms of use.[8] The Court finds *Moretti v. Hertz Corp.*, No. 13-02972, 2014 WL 1410432, at *1 (N.D. Cal. Apr. 11, 2014) to be instructive. In *Moretti*, the plaintiff used Hotwire.com to reserve a rental car from Hertz Dollar Thrifty ("Hertz"). *Id.*, at *1. In order to finalize the rental reservation, plaintiff was required to accept Hotwire's Terms and Conditions ("T&Cs"). *Id*. Hertz was not a signatory to Hotwire's T&Cs; however, it moved to transfer venue on the basis that it had standing, as a third-party beneficiary, to enforce a forum selection clause in Hotwire's T&Cs. *Id.*, at *4.

Hotwire's T&Cs stated the website "offers products, services, advice, merchandise and information through [Providers] on an 'as is,' 'as available' basis." *Id*. The court found that Hertz was clearly within the category of "Providers" because the plaintiff had booked his car rental through the Hotwire website and picked up the car at the selected Hertz location. *Id*. The T&Cs also stated "Hotwire . . . shall not be responsible for any Provider's failure to comply with these Terms and Conditions," which the *Moretti* court construed as further evidence that the parties to the contract intended for the T&Cs to bind Hertz as a Provider. *Id.* Thus, the court concluded Hertz was a third-party beneficiary with standing to enforce the forum selection clause in Hotwire's T&Cs. *Id.*

---

[8] OTAs, such as Expedia or Booking.com and others, are in the business of facilitating the process for consumers to search for and reserve hotel rooms, flights, and other travel-related services using their online platforms. Fiona Schaeffer *et al.*, *Competitor Parity Clauses: Increased Scrutiny of MFNs in the United States and Europe*, 15 ANTITRUST SOURCE 1, 2 (2015).

The case of *Ward v. American Airlines, Inc.*, No. 20-00371, 2020 WL 8415080, at *1 (N.D. Tex. Nov. 2, 2020), is also particularly instructive. Like the instant case, *Ward* involved a putative class action against an airline—American Airlines ("AA")—based on its alleged refusal to provide refunds in connection with COVID-19-related flight cancellations. Two of the plaintiffs purchased their airline tickets through two OTAs: Hotwire and Expedia. In doing so, they agreed to Hotwire and Expedia's respective TOUs, both of which contained arbitration clauses. *Ward*, 2020 WL 8415080, at *2-3. The *Ward* court found that, even though AA is not expressly a party to Hotwire or Expedia's TOU, AA is a third-party beneficiary to the TOUs and thus entitled to enforce the arbitration clauses contained therein. *Id.* at *7-8.

Here, as in *Moretti* and *Ward*, the parties' intent to make Air Europa a third-party beneficiary of Expedia's TOU is clearly evidenced by the express language in the arbitration clause and more broadly throughout the TOU. For instance, Expedia's TOU unambiguously provides that "any Claims you assert against . . . [our] travel suppliers or any companies offering products or services through us (which are beneficiaries of this arbitration agreement)" are to be "resolved by binding arbitration." Reply, Ex. 1 at 2-3.

Capua argues that the arbitration clause only applies to claims between him and Expedia because Expedia's TOU specifically defines the terms "we," "us," and "our" as referring to Expedia and its subsidiaries and corporate affiliates—and Air Europa is not included within the scope of those definitions. The Court is not persuaded by this selective reading. Although certain fragments from Expedia's TOU can be narrowly read to support Capua's interpretation, when read as a whole, the TOU clearly evinces an intent to allow Air Europa, a travel supplier, to compel arbitration as a third-party beneficiary. *Marion Mortg. Co. v. Howard*, 100 Fla. 1418, 1425 (1930) ("We cannot determine the rights of the parties by looking at only a part of the contract. We must construe it as a whole.") (citations omitted).

Additionally, Capua's reliance on *Calderon v. Sixt Rent a Car, LLC*, No. 19-62408, 2020 WL 700381, at *1 (S.D. Fla. Feb. 12, 2020) is unavailing. In *Calderon*, the defendant Sixt was unable to compel arbitration pursuant to an OTA's (Orbitz) terms of use because the court found that Sixt was not a "supplier" as defined by Orbitz's terms. Unlike in *Calderon*, in this case several provisions (including the arbitration clause) within Expedia's TOU indicate that Air Europa is a "travel supplier" as defined by the agreement. Reply, Ex. 1 at 5 ("Airlines and other travel suppliers may change their prices without notice."); *see also id.* at 5 ("[I]f you have purchased an airfare, please ensure you read the full terms and conditions of carriage issued by the travel supplier[.]").

Therefore, the Court concludes that Expedia's TOU, read as a whole, establishes a clear intent by the parties to make Air Europa, as a travel supplier, a third-party beneficiary of the agreement. Accordingly, Air Europa may invoke the arbitration clause in Expedia's TOU to compel arbitration by Capua as a signatory.[9]

### B. The Claims in this Case Are Within the Scope of the Arbitration Agreement

The next question is whether Capua's claims fall within the scope of the arbitration clause contained in Expedia's TOU. Under the FAA, "any doubts concerning the *scope* of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (emphasis added). Once a court finds that a valid agreement to

---

[9] On a somewhat related note, Capua's contention that Air Europa's COC does "not incorporate Expedia's Terms of Use" is entirely inaccurate. Resp. at 13. Contrary to Capua's representations, Air Europa's COC definitions state: "Condictions [sic] of Contract: Mean those statements contained in, or delivered with, the Ticket or Itinerary receipt (Printed Itinerary), identified as such and which incorporates, by reference, these Conditions of Carriage." Conditions of Carriage, Art. 1. Additionally, the COC defines a passenger ticket as: "Ticket: Means either the document entitled 'Passenger Ticket and Baggage Check' or the Electronic Ticket issued by Air Europa or on our behalf, and it includes or incorporates by reference the Conditions of Contract, notices and Coupons." *Id.* Thus, based on Air Europa's COC definitions, an OTA (such as Expedia) issues a ticket or itinerary receipt which incorporates Air Europa's COC; in turn, any statements contained in the document issued by the OTA (such as the OTA's own terms of use) are also incorporated by reference into Air Europa's COC.

arbitrate exists, "[t]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000). The Supreme Court has generally held that an arbitration provision covering claims and controversies "arising out of or relating to" an agreement is a "broad arbitration clause." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 5. And "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). The Eleventh Circuit has held that such evidence will be found only if the parties "clearly express their intent to exclude categories of claims from their arbitration agreement." *Paladino v. Avnet Comp. Techs., Inc.*, 134 F.3d 1057, 1057 (11th Cir. 1998).

In this case, the plain language of the arbitration clause is unambiguously broad. Capua seeks to limit the scope of "Claims" covered by Expedia's TOU to include only claims between Capua and Expedia. Resp. at 11-12. Capua's argument is unsupported by the plain language of the arbitration clause. Specifically, the arbitration clause at issue expressly applies to "*any* Claims you assert against us, our subsidiaries, *travel suppliers or any companies offering products or services through us (which are beneficiaries of this arbitration agreement*)." Reply, Ex. 1 at 3 (emphasis added). Moreover, the term "Claims" is defined to include "*any disputes or claims relating in any way to* the Website, any dealings with our customer service agents, *any services or products provided*, any representations made by us, or our Privacy Policy," whether those claims are brought against Expedia or against one of Expedia's travel suppliers—such as Air Europa. *Id.* (emphasis added).

Based on the plain language of Expedia's TOU, the Court finds Capua's claims are within the scope of the arbitration clause. Capua maintains that his claims are outside the scope of Expedia's TOU because they relate only to Air Europa's "breach of the Conditions of Carriage" and refusal to provide "refunds due to its passengers." Resp. at 12. But Capua's assertions belie

his own argument.  It is *through* his acceptance of Expedia's TOU that Capua expressly agreed to abide by Air Europa's COC.  Reply, Ex. 1 at 5 ("In particular, if you have purchased an airfare, please ensure you read the full terms and *conditions of carriage issued by the travel supplier*, which can be found on the supplier's website. *You agree to abide by the terms and conditions of purchase imposed by any supplier with whom you elect to deal*[.]") (emphasis added).  Accordingly, the Court concludes that Capua's claims against Air Europa are within the scope of the arbitration clause included in Expedia's TOU.[10]

### C. The Federal Regulation Capua Invokes Is Inapplicable

As a last resort, Capua contends that a Department of Transportation ("DOT") regulation prevents Air Europa from enforcing the arbitration agreement.  Specifically, Capua relies on 14 C.F.R. § 253.10, which he argues prohibits Air Europa from "relying on an external contract Plaintiff may have with non-parties to enlarge its rights," even if the arbitration clause is otherwise valid and enforceable.  Resp. at 13.  That regulation provides:

> No carrier may impose *any contract of carriage provision* containing a choice-of-forum clause that attempts to preclude a passenger, or a person who purchases a ticket for air transportation on behalf of a passenger, from bringing a claim against a carrier in any court of competent jurisdiction, including a court within the jurisdiction of that passenger's residence in the United States (provided that the carrier does business within that jurisdiction).

14 C.F.R. § 253.10 (emphasis added).  By its own terms, section 253.10 prohibits Air Europa from including an arbitration clause in its *own* contract of carriage.  But contrary to Capua's assertions, nothing in section 253.10 prohibits Air Europa from relying on an arbitration clause found in Expedia's TOU—an entirely separate and distinct contract.

---

[10]  Even if the scope of arbitrable issues was ambiguous—and it is not, the FAA's presumption in favor of arbitrability would be triggered because the Court has found that there is a valid and enforceable arbitration agreement.  *See* FAA, 9 U.S.C. § 1 *et seq.*; *see also Dasher*, 745 F.3d at 1115 (*citing Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 301 (2010)).

Capua also fails to mention that the applicability of section 253.10 is limited in nature. According to DOT commentary in the Federal Register, the regulation applies only to contracts of carriage for *domestic* flights. *Enhancing Airline Passenger Protections*, 76 Fed. Reg. 23, 2011 WL 152717, at *23155 (Apr. 25, 2011). Contracts for international flights are governed by the Warsaw and Montreal Conventions, as applicable. Capua purchased tickets to fly to Portugal; therefore, his contract of carriage with Air Europa for those *international* flights would not be governed by section 253.1. For these reasons, Capua cannot invoke section 253.1 to prohibit arbitration in this matter.

Although it has no bearing on the resolution of the instant Motion, the Court feels compelled to address Plaintiff's Notice of Supplemental Authority [ECF No. 34] ("Notice"). Plaintiff filed the Notice to apprise the Court of a recent opinion, *Rudolph v. United Airlines Holdings, Inc. and United Airlines, Inc.*, No. 20-02142, 2021 WL 534669, at *1 (N.D. Ill. Feb. 12, 2021), in which the court found that pursuant to section 253.10, the "[defendant] should not be permitted to do indirectly what federal regulations prohibit it from doing directly . . . ." *Id.* at *5. The *Rudolph* court addressed the same arbitration clause at issue here, under virtually identical circumstances, and ultimately prohibited United Airlines from invoking the arbitration clause "in an attempted end-run around [section 253.10]." *Id.*

This Court is troubled by the suggestion that a little-known DOT regulation could take precedence over the "emphatic federal policy in favor of arbitral dispute resolution." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 631 (1985). The FAA promotes a "federal policy favoring arbitration . . . [and] requiring that [courts] rigorously enforce agreements to arbitrate." *Davis v. Prudential Sec., Inc.*, 59 F.3d 1186, 1192 (11th Cir. 1995) (citations and internal quotations omitted). Under *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 343-45 (2011), "rules that stand as an obstacle to the FAA's objectives" represent the kind of "hostility"

to arbitration that the Supreme Court has repeatedly found inappropriate and unenforceable under the FAA. Following that logic, the FAA is a "super-statute" [11] and thus, as the Fifth and Eleventh Circuits have found, it can at times swallow *Chevron*[12] deference. *See Davis v. S. Energy Homes, Inc.*, 305 F.3d 1268, 1278 (11th Cir. 2002), *cert. denied*, 528 U.S. 945 (2003); *see also Walton v. Rose Mobile Homes LLC*, 298 F.3d 470, 475-78 (5th Cir. 2002).[13] In any event, because the Court finds that section 253.10 is inapplicable to Capua's claims, the Court need not address whether the DOT's regulation should be accorded any deference.[14]

## CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant Air Europa Lineas Aereas S.A. Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint and Compel Arbitration [ECF No. 13] is **GRANTED IN PART and DENIED IN PART**. Specifically, the Court **GRANTS** the Motion to Compel Arbitration of

---

[11] *See* William N. Eskridge, Jr. & John Ferejohn, *Super-Statutes*, 50 DUKE L.J. 1215, 1216, 1260-63 (2001) (defining the term "super-statute" as, in part, a statute whose "institutional or normative principles have a broad effect on the law—including an effect beyond the four corners of the statute"—and explaining how the FAA is one such statute).

[12] *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

[13] In *Davis*, the Eleventh Circuit grappled with challenges to the Federal Trade Commission's ("FTC") regulations and interpretations, which at the time prohibited binding arbitration of auto-warranty claims under the Magnuson–Moss Warranty Act ("MMWA"). 305 F.3d at 1270. The *Davis* court refused to defer to the FTC. *Id.* at 1279-80. First, it concluded (under the Supreme Court's *McMahon Test*) that no intent to limit arbitration was "deducible from the [MMWA's] text or legislative history, or from an inherent conflict between arbitration and the statute's underlying purposes." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 227 (1987) (internal citations omitted). Next, under step one of the *Chevron* analysis, the court concluded that because "Congress failed to directly address binding arbitration in the text or legislative history," the MMWA was ambiguous. 305 F.3d at 1278. Finally, the court held that the FTC's interpretation of its substantive act was unreasonable—because any such limit on arbitration is unreasonable—and therefore no deference was warranted. *Id.* at 1277-80. In *Walton*, the Fifth Circuit, presented with the same issue, reached the same conclusion under a slightly different analysis. 298 F.3d at 475-78.

[14] Air Europa moves, in the alternative, to dismiss under Rules 8(a), 10(b), 12(b)(1) and 12(b)(6). Because the Court grants Air Europa's Motion to Compel Arbitration, it need not consider its alternative motion to dismiss these claims.

Plaintiff Capua's claims. Accordingly, the parties shall submit all claims asserted in the Amended Complaint to arbitration in accordance with the arbitration provision in Expedia's TOU.

2. This matter is **STAYED** pending arbitration of Plaintiff's claims. The Clerk of Court is directed to **CLOSE** this matter for administrative purposes.

3. All pending motions are **DENIED AS MOOT**, and any pending deadlines are **TERMINATED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 15th day of March, 2021.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**